**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------------x
AW INDUSTRIES, INC.,

                      Plaintiff,

      - against -

 

SLEEPINGWELL MATTRESS INC.,

                    Defendant.
---------------------------------------------------------------x

**REPORT &**
**RECOMMENDATION**

10-cv-04439 (NGG) (RER)

**RAMON E. REYES, JR., U.S.M.J.:**

       Plaintiff AW Industries, Inc. ("AW") brought this action against defendant Sleepingwell

Mattress Inc. ("Sleepingwell") for trademark infringement, false designation of origin, false

representations in commerce, and unfair competition in violation of the Lanham Act, 15 U.S.C. §

1114(1) and § 1125(a)(1), New York General Business Law ("GBL") § 133, and common law.

Upon Sleepingwell's failure to answer or otherwise appear in this action, AW sought entry of

default. (Dkt. No. 4.) On November 18, 2010, the Clerk of Court noted default (Dkt. Entry,

11/18/2010), and AW subsequently filed a motion for default judgment (Dkt. No. 6). The

Honorable Nicholas G. Garaufis referred the motion to me for report and recommendation on

liability and damages, as well as AW's motion for leave to file an amended affidavit of service.

(Dkt. Entry, 5/25/2011.) For the reasons herein, I respectfully recommend that default judgment

be entered against Sleepingwell in the amount of $241,647.06 inclusive of damages and

attorneys' fees and costs.

# BACKGROUND

## I.     Allegations Against Sleepingwell

AW manufactures and sells mattresses, box springs, and bed foundations under the name "SLEEPWELL"—a registered trademark purchased (along with all its rights) by AW in 1991 from Crestar Bank at a foreclosure sale. (Compl. ¶¶ 6-7, 10, Exh. A; *see also* Affidavit of Stuart Bannett in Support of Damages ("Bannett Aff."), dated July 21, 2011, ¶¶ 3, 7.) The SLEEPWELL trademark has been used continuously for mattresses and related products since 1968, with AW (and its previous owners) using it to advertise, promote, and identify its products to consumers. (Compl. ¶¶ 9, 11.) According to AW, the SLEEPWELL mark represents to consumers AW's "goodwill and recognition as a leading provider of mattresses" and related products. (*Id.* at ¶ 12.)

Sleepingwell, a competitor of AW, also manufactures and sells mattresses, box springs, and bed foundations, which are similar to AW's products. (*Id.* at ¶¶ 8, 13.) Sleepingwell was incorporated on November 29, 2007. (Affirmation in Support of an Inquest for Damages ("Inquest Aff."), dated July 21, 2011, Exh. C.) In addition to using the mark Sleepingwell on its products, Sleepingwell also uses the SLEEPWELL mark on some of its products. (Compl. ¶ 15.) AW has not authorized Sleepingwell to use the SLEEPWELL mark. (*Id.* at ¶ 16.) AW alleges that both verbally and by letter, AW informed Sleepingwell of its ownership of the SLEEPWELL trademark, and requested that Sleepingwell cease and desist use of the same (*id.* at ¶ 17),[1] but

---

[1] I must note that Sleepingwell was not incorporated at the time of AW's February 12, 2007 cease and desist letter. Presumably, AW relies on its assertion that Sleepingwell is a continuation of another corporation when it states that it gave Sleepingwell written warning of the infringing activity by its February 12 letter. Ultimately, however, nothing in this R&R relies upon Sleepingwell's receipt of the "cease and desist" letter.

defendant continues to use the Sleepingwell and SLEEPWELL marks on its products (*id.* at ¶¶ 17-18). AW asserts that use of the Sleepingwell and SLEEPWELL marks is likely to and has lead to consumer confusion as to the source of defendant's products and as to plaintiff's endorsement of the same. (*Id.* at ¶¶ 24-25.)

## II.    Prior Litigation Against SWM

On September 21, 2007, AW brought suit against Sleep Well Mattress Inc. ("SWM") for infringement of the SLEEPWELL mark. (Compl. ¶ 14); *see AW Industries, Inc. v. Sleep Well Mattress, Inc.*, No. 07-CV-3969, 2009 WL 485186 (E.D.N.Y. Feb. 26, 2009). SWM failed to answer or otherwise appear in that action. On November 29, 2007, SWM formally changed its corporate name to "The Great American Mattress Company, Inc.," and Sleepingwell was incorporated on the same date and at the same address. (Inquest Aff., Exhs. B and C.)

By Report and Recommendation dated January 30, 2009, the Honorable Joan M. Azrack recommended that default be entered against SWM, that AW be awarded $300,00 in trebled damages and $21,794.26 in attorneys' fees and costs, and that injunctive relief be granted. The Honorable Sandra L. Townes adopted the R&R by Order dated February 26, 2009 (the "2009 judgment"). AW has been unable to collect on the 2009 judgment against SWM. (Bannett Aff. ¶ 16.)

## III.    Procedural History of the Present Action

Filing the instant Complaint on September 28, 2010, AW asserted four claims against Sleepingwell: (1) infringement of a federally registered trademark, (2) use of false designations or origin and false representations in commerce, (3) common law trademark/unfair competition, and (4) unfair competition under GBL § 133. Plaintiff sought a permanent injunction, monetary

damages, and attorneys' fees and costs.  The Clerk of Court noted defendant's default on November 18, 2010.

Plaintiff filed its motion for default judgment on December 2, 2010, with an affidavit of service by certified mail/return receipt requested to Sleepingwell at its registered address.  Upon learning that the corporation was no longer accepting mail there, plaintiff re-served the motion by delivering it to the New York Secretary of State, authorized agent to accept service of process on behalf of all New York corporations.  (Dkt. No. 8); *see also* N.Y. Civil Practice Law and Rules ("CPLR") § 311; N.Y. Business Corporation Law ("BCL") § 304(a).  Thereafter, plaintiff requested that it be permitted to substitute proof of this second method of service ("12/8/2010 affidavit") for the affidavit filed with the motion.  (Dkt. No. 8.)  Judge Garaufis subsequently referred both motions to me, and I ordered plaintiff to submit its request for damages and supporting documentation.

As an initial matter and by separate order, good cause being shown, I grant plaintiff's request to substitute the 12/8/2010 affidavit of service for the affidavit filed with the initial motion for default judgment.  Since defendant has been properly served with this motion, I continue to the merits.

## DISCUSSION

### I.   Liability

Upon a defendant's default, all of the well-pleaded allegations in the complaint pertaining to liability are deemed true.  *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992).  It is, however, for the court to determine whether such factual allegations establish the defaulting defendant's liability as a matter of law.  *Finkel v.*

*Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981) (noting that once a default has been entered a district court "need not agree that the alleged facts constitute a valid cause of action").

A.    Sleepingwell's Infringing Conduct

To establish liability for a claim of trademark infringement, plaintiff must show: "(1) it has a valid mark that is entitled to protection under the Lanham Act; and that (2) the defendant used the mark [or colorable imitation], (3) in commerce, (4) 'in connection with the sale ... or advertising of goods or services,' 15 U.S.C. § 1114(1)(a), (5), without the plaintiff's consent." *1-800 Contacts, Inc. v. WhenU.Com, Inc.*, 414 F.3d 400, 406-07 (2d Cir. 2005). Plaintiff also must establish that use of the mark "'is likely to cause confusion . . . as to the affiliation, connection, or association of [defendant] with [plaintiff], or as to the origin, sponsorship, or approval of [the defendant's] goods, services, or commercial activities by [plaintiff].'" *Id.* at 407 (quoting 15 U.S.C. § 1125(a)(1)(A)).

Plaintiff has established liability for trademark infringement against Sleepingwell. Plaintiff provided a copy of the valid registration of the SLEEPWELL mark, and alleged that it purchased the mark and all rights thereto in 1991. (Compl. ¶¶ 7, 9, Exh. A.) Plaintiff further alleged that Sleepingwell uses its corporate name to sell products, in addition to using the SLEEPWELL mark on its products, which are sold in interstate commerce. (*Id.* at ¶¶ 8, 13, 15.) Plaintiff alleged that it never authorized Sleepingwell's use of the SLEEPWELL mark. (*Id.* at ¶ 16.) Finally, plaintiff alleged that the Sleepingwell name was used in an effort to confuse or deceive consumers, and that it had such effect. (*Id.* at ¶¶ 18, 24-25.) Accordingly, AW's well-pleaded allegations establish Sleepingwell's liability for its infringing conduct.

B.    SWM's Infringing Conduct

In its inquest submissions, plaintiff seeks to recover from Sleepingwell the damages, fees, and costs contained in the 2009 judgment against SWM, a distinct legal entity.[2]  (Pl. Mem. of Law in Support of Damages Inquest ("Pl. Mem."), dated July 21, 2011, at 2, 5-6.)  Plaintiff's efforts are thus a creative attempt to hold Sleepingwell liable for the 2009 judgment, making an end-run around the proper procedure to enforce judgment against a different party.

1.    AW's Allegations Do Not Establish that Sleepingwell is the Same Entity as SWM

Plaintiff often uses SWM, Sleepingwell, and defendant interchangeably.  Yet, Sleepingwell is the named defendant here; SWM is not.  Plaintiff never sought to and did not add Sleepingwell as a defendant in the prior litigation, despite its existence over a year before the 2009 judgment was entered.  Merely substituting one corporate entity for the other does not establish Sleepingwell's liability for conduct occurring before it existed, or for amounts awarded against SWM.

Aside from using the corporations interchangeably, plaintiff made only one allegation *in the complaint* linking Sleepingwell and SWM—as a result of the prior lawsuit, SWM "changed its corporate name insignificantly and began using the name [Sleepingwell] in connection with the sale of mattresses" and related products.  (Compl. ¶ 15.)  In its inquest submissions however, plaintiff alleges that SWM "changed its name and simultaneously created [Sleepingwell] expressly for the purpose of avoiding the judgment entered against the former entity, and to

_____

[2]  Although AW does not explicitly request the damages awarded in the 2009 judgment, plaintiff includes in its calculations the five years of SWM's infringing conduct subject of that judgment.  Its request, therefore, incorporates the damages already awarded.

continue to infringe upon the Plaintiff's trademark." (Pl. Mem. at 6.) Plaintiff argued that this allegation *in its damages submission* must be deemed true by way of defendant's default, and thus they have established Sleepingwell's liability for the five years of SWM's infringing conduct subject of the 2009 judgment.[3]

Allegations are not well pleaded if they are "made indefinite or erroneous by other allegations in the same complaint[,] . . . are contrary to facts of which the court will take judicial notice, . . . are not susceptible of proof by legitimate evidence, or . . . are contrary to uncontroverted material in the file of the case." *Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 63 (2d Cir. 1971), *rev'd on other grounds*, 409 U.S. 363 (1973)). Here, the allegation that SWM "changed its name insignificantly" to Sleepingwell, or even plaintiff's implication that SWM and Sleepingwell can be treated as the same entity are contrary to material in the case file and facts of which the court could take judicial notice (*i.e.* certificates of amendment and incorporation are public documents of which it is permissible to take judicial notice).

Specifically, SWM clearly changed its corporate name to "The Great American Mattress Company, Inc."—notably not the "insignificant" name change plaintiff referenced in the complaint. (Inquest Aff., Exh. B.) Plaintiff's actual allegation—coupled with its use of SWM and "Defendant" interchangeably in the preceding and subsequent paragraphs—implied that SWM changed its name to "Sleepingwell Mattress, Inc.," which *would* have been an insignificant difference from "Sleep Well Mattress, Inc." As plaintiff's submissions show, however, Sleepingwell is a separate and distinct entity from SWM. (Inquest Aff., Exh. C.) SWM is now

---

[3] Impliedly, this would also be the allegation that proves Sleepingwell must pay the fees and costs of the previous litigation.

"The Great American Mattress Company, Inc." (Inquest Aff., Exh. B.)

Thus, plaintiff's only factual allegation that links Sleepingwell and SWM, treating them as one corporation, is not a well-pleaded allegation, and not deemed true by way of defendant's default. Sleepingwell, the named defendant here, is clearly and incontrovertibly a separate legal entity from SWM—any allegations to the contrary are not well-pleaded.

2. No Notice that Plaintiff Sought to Hold Sleepingwell Liable for 2009 Judgment

Plaintiff's counsel stated that AW was compelled to file this action since it could not collect the 2009 judgment directly from SWM. (Inquest Aff. ¶ 13.) Yet curiously, the complaint failed even to note that the 2009 monetary judgment was still outstanding. Whether or not this is an accurate characterization of plaintiff's decision to initiate this lawsuit against Sleepingwell, however, Sleepingwell is a distinct legal entity from SWM. AW did not allege in this complaint that Sleepingwell was liable as a successor, alter ego, or mere continuation of SWM. The claims in the complaint against Sleepingwell—the only named defendant—are for *Sleepingwell's* infringement of plaintiff's trademark.

A claim that the 2009 judgment is enforceable against Sleepingwell would be a cause of action unto itself, but such cause of action is not pleaded. *See Epperson v. Entm't Express, Inc.*, 242 F.3d 100, 106 (2d Cir. 2001) (noting that claims of alter ego liability "raise an independent controversy with a new party in an effort to shift liability"). The counts of the complaint are clearly for trademark infringement, unfair competition, and related claims—but not for the collection of the 2009 judgment. By seeking to collect on the amounts awarded against SWM in 2009 by way of this damages inquest, plaintiff seeks to shift liability to a new party, and thus

ultimately seeks judgment for a claim that was not pleaded.

In the complaint, plaintiff claims the prior action and judgment was against "Defendant" (a fact belied by the certificate of incorporation provided by plaintiff). (Compl. ¶ 14.) Plaintiff alleged that "[a]s a result of the prior action against [SWM], Defendant changed its corporate name" and continued infringing. (Compl. ¶ 15.) But as explained above, the complaint did not allege plaintiffs' inability to collect on the 2009 judgment, or even note that the judgment was still outstanding. Perhaps inclusion of these facts would have alerted defendant as to an "implied" cause of action to hold Sleepingwell liable for the 2009 judgment, or as to AW's intention to seek damages for SWM's infringing conduct that was subject of the prior litigation. As alleged, however, AW sought only to hold Sleepingwell liable for its infringing conduct, not SWM's.

\*      \*      \*

Although a separate corporate entity, Sleepingwell could be held liable for SWM's acts or judgments as an alter ego, mere continuation, or liable successor of SWM, and plaintiff is free to initiate a separate action to that effect. However suspect the circumstances surrounding Sleepingwell's incorporation, plaintiff's attempt to hold Sleepingwell liable for the judgment against SWM fails as a matter of law here.[4]

---

[4] Notably absent from plaintiff's complaint are factual allegations from which the Court could find that Sleepingwell is the alter ego, mere continuation, or liable successor of SWM. So even accepting plaintiff's interpretation of the facts, plaintiff has failed to establish that Sleepingwell can be held liable for the judgment against SWM. For example, there are no allegations about who owns SWM or Sleepingwell, whether Sleepingwell took over SWM's assets or inventory, whether management and employees remained the same, or whether Sleepingwell assumed SWM's contracts necessary to continue business (*i.e.* with suppliers, etc.). *E.g.*, *Douglas v. Stamco*, 363 Fed. Appx. 100, 102 (2d Cir. 2010) ("[C]ontinuity of ownership is the essence of a merger" for successor liability claim); *McDarren v. Marvel Entm't Grp., Inc.*,

III.    **Damages**

While a defendant's default is deemed to constitute an admission of all well-pleaded allegations pertaining to liability, it does not constitute an admission of allegations pertaining to damages.  *Lyons P'ship, L.P. v. D & L Amusement & Entm't, Inc.*, 702 F. Supp. 2d 104, 111 (E.D.N.Y. 2010) ("A defendant's default is an admission of all well-pleaded factual allegations in the complaint except those relating to damages."); *see also Greyhound*, 973 F.2d at 158.  The court must ensure that there is a factual basis for the damages sought, and may do so either by conducting a hearing or relying on affidavits and other documentary evidence.  *See* FED. R. CIV. P. 55(b); *Transatl. Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997).  Neither party has requested a hearing, and plaintiff's documentary evidence is uncontradicted by defendant, who continues to be absent from these proceedings.  Since I find that plaintiff's submissions provide an adequate basis upon which to determine damages, a hearing is not necessary.

A.    Monetary Damages

The Lanham Act allows a successful plaintiff to recover: "(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action."  15 U.S.C. § 1117(a). Recognizing the difficulty in isolating the causation of diverted sales and measuring reputational harm, an award of defendant's profits is often used as a proxy for plaintiff's actual damages.

---

No. 94 Civ. 910, 1995 WL 214482, at *8 (S.D.N.Y. Apr. 11, 1995) (finding purchasing entity the "mere continuation" of the still-existing selling entity where the seller transferred its assets, business location, employees, management and good will); *John John, LLC v. Exit 63 Dev., LLC*, 35 A.D.3d 540, 541 (2d Dep't 2006) (To pierce the corporate veil and hold one corporation liable for the acts of another, courts consider: "whether there is an overlap in ownership, officers, directors and personnel, inadequate capitalization, a commingling of assets, or an absence of separate paraphernalia that are part of the corporate form.").

*George Basch Co., Inc. v. Blue Coral, Inc.*, 968 F.2d 1532, 1539 (2d Cir. 1992). Yet using either defendant's profits or plaintiff's actual damages, the court has broad discretion to determine the appropriate award. *See* 15 U.S.C. § 1117(a) (allowing the court to adjust its finding of defendant's profits if the amount is excessive or inadequate, or also to increase up to three times the amount it determines as plaintiff's damages). In using this discretion, however, the court should bear in mind that the statutory recovery scheme is primarily remedial—meant to compensate, not penalize. *Id.*; *Getty Petroleum Corp. v. Bartco Petroleum Corp.*, 858 F.2d 103, 109, 113 (2d Cir. 1988).

1.    Defendant's Sales/Plaintiff's Damages

In assessing defendant's profits, plaintiff need only prove the amount of defendant's sales; defendant bears the burden of proving the amount of costs and other deductions to determine profit. 15 U.S.C. § 1117(a). Here, as plaintiff noted, defendant's refusal to cooperate makes even the task of determining defendant's sales a difficult one. In the absence of direct proof of defendant's sales because of default, the plaintiff may rely on estimated sales and profits figures. *See Century 21 Real Estate LLC v. Paramount Home Sales, Inc.*, No. 06-CV-2861, 2007 WL 2403397, at *4 (E.D.N.Y. Aug. 20, 2007) (allowing plaintiff to use reasonable estimate of profits where defendant's default made ascertaining exact sales figures impossible); *Phat Fashions LLC v. Blue Max Corp.*, No. 01 Civ. 3933, 2005 WL 1221838, at *2 (S.D.N.Y. May 2, 2005) (same).

Plaintiff submitted the affidavit of its President, Stuart Bannett ("Bannett"), to provide an estimate of defendant's sales, and to offer the Court two methods of calculating defendant's profits. Bannett, who has been in the bedding business for over 35 years and has been AW's

President for over 20, reviewed the Profit and Loss Statements of retail bedding stores across the country and specifically the Northeast, as well as industry publications' reports of mattress store sales. (Bannett Aff. ¶ 11.) Based upon his review of these materials and his extensive experience in the industry, Bannett estimated that $500,000 in annual gross sales is necessary for a bedding retail store to stay afloat in an urban area. (*Id.*) He further asserted that this estimate is likely conservative for the New York City region where rents, advertising, and labor costs are higher than average. (*Id.*) Since Sleepingwell has at least one retail store in Queens, Bannett estimated that its gross sales are at least $500,000 per year. (*Id.* at ¶ 12.)

Plaintiff's first method of calculation asks the Court not to deduct any costs/disbursements from its "conservative" estimate of defendant's sales since it is defendant's burden to establish costs and defendant has not appeared. In this case, I am not convinced this is a fair assessment of defendant's profits, especially taking into account the statutory direction that damages are to "constitute compensation and not a penalty." 15 U.S.C. § 1117(a); *see also*, *Sleep Well Mattress, Inc.*, 2009 WL 485186, at *3 (rejecting AW's request to use this pure sales method to calculate damages).

Plaintiff's alternative suggestion, however, is both reasonable and appropriate under these circumstances—to assume costs and deductions amounting to 96% of sales, and thus award AW 4% of the estimated sales or $20,000 per year of infringing conduct. Bannett noted that such estimation of costs is on the high-end, and that even a defendant appearing in the action would have a hard time establishing such high costs. (Bannett Aff. ¶ 19.) Bannett derived this figure from the industry standard to assess a licensing fee of 4% of sales of all products manufactured with a registered trademark. (*Id.* at ¶¶ 20-21.) Thus, AW advocated awarding it the same amount

that it would have received had defendant entered into a valid licensing agreement. I agree that this is a reasonable estimate of damages given that defendant's bear the fault for the inability to calculate an exact figure.

2.    Duration of Infringing Activity

Plaintiff asserted that it has established over eight years of infringing activity by Sleepingwell. Plaintiff based this on its allegation that SWM and Sleepingwell are the same, and that SWM was found liable in 2009 for five years of trademark infringement. However, as discussed plaintiff has not, and cannot, establish that Sleepingwell has been infringing on its trademark for eight years and eight months on the basis of the allegations in this Complaint.[5]

Sleepingwell did not exist until November 29, 2007, and as discussed plaintiff's allegations fall short of establishing that Sleepingwell is the same entity as SWM. (Inquest Aff., Exh. C; Bannett Aff. ¶ 17 (acknowledging that Defendant Sleepingwell has been infringing on AW's trademark since its date of incorporation, November 29, 2007).) A non-existent entity cannot engage in trademark infringement. Accordingly, plaintiff can only establish that Sleepingwell has been infringing since its inception, or three years and eight months.

Therefore, I calculate damages based on the profits/damages estimation discussed above from the date of Sleepingwell's inception to the present (three years and eight months), for a total of $73,400 ($20,000 profits/year x 3.67 years) in actual damages.

---

[5] Additionally, even if Sleepingwell and SWM were the same, Judge Townes's decision covered the five years immediately preceding Bannett's submission in that case, which was dated January 9, 2009. (*See* Case No. 07-CV-03969, Dkt. No. 17-1, ¶ 13.) So infringement was found from January 2004 onward, which would only establish infringing activity for seven years and eight months.

3.    Enhanced Damages

Plaintiff also seeks an enhancement of actual damages up to the maximum allowed by statute.  (Pl. Mem. at 9.)  Plaintiff argued that given the conservative nature of both its actual damages calculation and the willful nature of the infringement, an enhancement is warranted. The Lanham Act permits the court to award "any sum above the amount found as actual damages, not exceeding three times such amount."  17 U.S.C. § 1117(a).  As noted previously, however, the court should bear in mind that the damages awarded are remedial, not punitive. *See id.*

I agree with AW that the estimates it provided are on the conservative side, and find that the requested enhancement is both appropriate and will serve to adequately compensate AW rather than penalize Sleepingwell.  Accordingly, I respectfully recommend plaintiff be awarded three times the actual damages calculation, for a total of $220,200 in monetary damages.

B.    Attorneys' Fees

Plaintiff requests $73,378.30 in attorneys' fees.  (Inquest Aff. ¶ 16.)  Under the Lanham Act, courts are empowered to award reasonable attorney's fees, however, only "in exceptional cases."  15 U.S.C. § 1117(a).  "The Second Circuit has explained that such awards are appropriate in instances of . . . 'willful infringement.'"  *Sleep Well Mattress, Inc.*, 2009 WL 485186, at *4 (quoting *Patsy's Brand, Inc. v. I.O.B. Realty, Inc*., 317 F.3d 209, 221 (2d Cir. 2003)).  Sleepingwell's default deems its infringement willful.  *See Victoria Cruises, Inc. v. Changjiang Cruise Overseas Travel Co.*, 630 F. Supp. 2d 255, 261 (E.D.N.Y. 2008) ("A defendant's default may be considered as evidence of willful infringement.");  *Kenneth Jay Lane, Inc. v. Heavenly Apparel, Inc.*, No. 03-CV-2132, 2006 WL 728407, at *7 (S.D.N.Y. Mar. 21,

2006) (deeming defendant's infringement willful based on default, and therefore finding an award of attorneys' fees appropriate); *Tiffany (NJ) Inc. v. Luban*, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003) ("By virtue of the default, [the defendants'] infringement is deemed willful."). Therefore, I recommend plaintiff be awarded reasonable attorneys' fees.

### 1. Fees Awarded with the 2009 Judgment

Initially, I note that plaintiff included in its request those fees awarded against SWM in the 2009 judgment—a total of $19,469.30. As discussed *supra*, Sleepingwell is a separate legal entity from SWM. Plaintiff incurred fees in connection to the 2009 judgment as a result of litigation against SWM, not Sleepingwell. I recognize that plaintiff has had difficulty obtaining any of the 2009 judgment from SWM, or as it is now known, "The Great American Mattress, Company, Inc.," but attempting to bootstrap its fees incurred against SWM to this damages inquest is inappropriate. Accordingly, I only consider the reasonableness of fees associated with the instant action, and will not include in my recommendation any fees awarded in the other litigation.

### 2. Legal Standards

To determine whether attorneys' fees are reasonable, the Second Circuit uses the "presumptively reasonable fee," which equals a reasonable hourly rate multiplied by a reasonable number of hours expended. *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009); *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 190 (2d Cir. 2008). District courts have broad discretion in determining the reasonable rate, but should look the prevailing hourly rates of the district where they sit, and may consider other case-specific variables such as the complexity of the case and the attorney's

level of expertise. *Simmons*, 575 F.3d at 174; *Arbor Hill*, 522 F.3d at 186-87, 190. In determining the reasonableness of the hours expended on a case, courts must examine the hours billed "with a view to the value of the work product of the specific expenditures to the client's case." *Tr. of the Rd. Carriers Local 707 Welfare Fund v. Goldberg*, No. 08-CV-0884, 2009 WL 3497493, at *9 (E.D.N.Y. Oct. 28, 2009). Courts should exclude from any award "'excessive, redundant or otherwise unnecessary hours.'" *Lyons P'ship*, 702 F. Supp. 2d at 120 (quoting *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999)).

3.     Reasonableness of Plaintiff's Fee Calculation

Plaintiff employed two law firms in bringing this trademark infringement action: Offit Kurman of Baltimore, MD ("Offit Kurman") and Harris Beach LLC ("Harris Beach"). Offit Kurman charged plaintiff $395 per hour for partner Harold Walter, Esq. (Inquest Aff. ¶ 14, Exh. D.) Harris Beach charged plaintiff: $345 per hour for partners Abbie Eliasberg Fuchs, Esq. and Andrew J. Orenstein, Esq.; $295 per hour for associate Kenneth Beehler, Esq.; and, $125-190 per hour for paralegals and support staff.[6] (Inquest Aff. ¶ 15, Exh. E.) The rates billed for the partners and associate who worked on this case are reasonable compared to the rates awarded in similar cases. *Sleep Well Mattress, Inc.*, 2009 WL 485186, at *5 (approving hourly rates of $275-$395 for associates and partners); *Microsoft Corp. v. Computer Care Ctr., Inc.*, No. 06-CV-1429, 2008 WL 4179653, at *1 (E.D.N.Y. Sept. 10, 2008) (approving hourly rates of $500 for partners and $385 for associates).

---

[6] Both Beehler and Orenstein's rates increased over the course of time for which billing records were submitted. However, for reasons explained below, the hours billed at lower rates were not included in my calculation of plaintiff's fee award. Harris Beach also submitted the rates and hours for partner Lee Woodard, Esq. and associates Mark Trokan, Esq. and Abby Volin, Esq. Their hours were similarly excluded from my calculation.

However, the rates charged for paralegals and support staff are significantly higher than those awarded in intellectual property cases this District. *See, e.g.*, *Artemide Inc. v. Spero Elec. Corp.,* No. 09-CV-1110, 2010 WL 5452075, at *4 (E.D.N.Y. Nov. 23, 2010), *adopted by* 2010 WL 5452077 (E.D.N.Y. Dec 28, 2010) (reducing paraprofessional hourly rate to $100 in trademark default); *Realsongs, Universal Music Corp. v. 3A North Park Ave. Rest Corp.*, 749 F. Supp. 2d 81, 92 (E.D.N.Y. 2010) (reducing hourly rate for paralegal from $230 to $100 in copyright default); *Eu Yan Sang Intern. Ltd. v. S&M Enters. (U.S.A.) Enterprise Corp.*, No. 09-CV-4235, 2010 WL 3824129, *7 (E.D.N.Y. Sept. 8, 2010), *adopted by*, 2010 WL 3806136 (E.D.N.Y. Sept. 23, 2010) (noting that approved hourly rates for legal assistants are usually between $70 and 80). Plaintiff has provided the Court with no basis to award a higher rate for paraprofessional work than that awarded in similar cases. Therefore, I recommend reducing the rate awarded for paralegal and support staff to $100 per hour, which is in line with prevailing rates in this District.

Harris Beach's records reveal that it spent a total of 145.9 hours on this uncontested litigation. (Inquest Aff., Exh. E) Offit Kurman billed a less shocking total of 28.5 hours. (Inquest Aff., Exh. D.) Both firms included hours spent attempting to enforce the judgment against SWM. As explained previously, as pleaded this is not an action to enforce the 2009 judgment. The complaint alleged trademark infringement by Sleepingwell, and asserted a cause of action for the same. Thus, it is inappropriate to include in this fee award against Sleepingwell the 76.5 hours Harris Beach spent attempting to enforce the 2009 judgment against SWM. Likewise, Offit Kurman's 26.6 hours regarding the same are similarly inappropriate.

Excluding those hours, I find the remaining 71.3 hours a reasonable amount of time to

have spent on this case.[7]  Accordingly, I respectfully recommend awarding $20,771.50 in

attorneys' fees:

| Attorney/Support Staff | Billing Rate | Number of Hours | Billing Amount |
|---|---|---|---|
| A. Orenstein | $345 | 22.9 | $7,900.50 |
| A. Fuchs | $345 | 5.5 | $1,897.50 |
| K. Beehler | $295 | 31.4 | $9,263 |
| H. Walter | $395 | 1.9 | $750.50 |
| K. Spellman | $100 | 4.2 | $420 |
| P. Farinella | $100 | .5 | $50 |
| E. Fragher | $100 | 3.7 | $370 |
| J. Pedzich | $100 | 1.2 | $120 |
| Total | | 71.3 | $20,771.50 |

C.     Costs

Plaintiff also requested $4,259.78 in costs.  (Inquest Aff., ¶ 17.)  Under the Lanham Act, a

successful plaintiff is entitled to recover the costs of the action. 15 U.S.C. § 1117(a).  The

plaintiff may recover those costs "necessary to cure the effects of the harm caused by the

violation." *Eu Yan Sang*, 2010 WL 3824129, at *5 (quoting *Forschner Grp. v. Arrow Trading*

---

[7]  Careful review of the billing records does reveal a few questionable entries.  For
example on October 23, 2010, 24 minutes were billed to "calculate" defendant's deadline to
answer.  On October 28, 2010, 30 minutes were billed to "analyze" a routine initial conference
scheduling order.  But these few entries aside, the records reflect reasonable expenditures of
time, and the overall award is reasonable compared to similar trademark infringement cases
including the SWM litigation, and so I will recommend no further reduction.  *See, e.g.*, *Unilever
Supply Chain, Inc. v. I & I Wholesale Food Inc.*, No. 10-CV-1077, 2011 WL 1099841, at *1
(E.D.N.Y. Mar. 24, 2011) (adopting recommendation to award $19,144 in fees and costs in
trademark default judgment); *Sleep Well Mattress, Inc.*, 2009 WL 485186, at *6 (awarding
$19,469.30 in attorneys' fees); *Microsoft Corp.*, 2008 WL 4179653, at *17 (awarding $22,243 in
attorneys' fees in copyright default judgment).

*Co.*, 124 F.3d 402, 406 (2d Cir. 1997)).

Like its request for attorneys' fees, AW included both the costs of this action and those of

the SWM action, as assessed in the 2009 judgment. As discussed in the context of fees, AW is

only entitled to an award for the costs of *this* action. Therefore, I have excluded the costs

awarded in connection with the 2009 judgment, as well as costs incurred in attempting to enforce

that judgment.[8] I have reviewed the remaining billing entries for costs, and find them to be

reasonable. Plaintiff seeks filing and service of process fees, and costs of photocopying, legal

research, and postage. These costs are those normally subsumed by the client during litigation,

and so are appropriate to cure the effects of the infringing activity. Accordingly, I respectfully

recommend plaintiff be awarded $675.56 in costs.

## IV.    <u>Injunctive Relief</u>

Plaintiff also seeks injunctive relief against further infringing activity. The Second

Circuit has stated that a plaintiff seeking a permanent injunction "in *any* type of case" must

satisfy the Supreme Court's four-factor test. *Salinger v. Colting*, 607 F.3d 68, 78 n.7 (2d Cir.

2010). This means that the plaintiff must show—in addition to a likelihood of success—"(1) that

it has suffered irreparable injury; (2) that remedies available at law . . . are inadequate to

compensate for that injury; (3) that, considering the balance of hardships between the plaintiff

and defendant, a remedy in equity is warranted; and (4) that the public interest would not be

disserved by a permanent injunction." *Id.* at 77 (quoting *eBay, Inc. v. MercExchange, L.L.C.*,

547 U.S. 388, 391 (2006)).

---

[8] I began tabulating costs from the September 27, 2010 entry for the filing fee in this case
since it was the first entry that was clearly related to this litigation, and not related to enforcing
the 2009 judgment. (*See* Inquest Aff., Exh. E.)

A.     Likelihood of Success on the Merits

Through its default, Sleepingwell has admitted all of plaintiff's well-pleaded allegations pertaining to liability. Therefore, and as discussed above, plaintiffs have demonstrated more than a likelihood of success on merits; they have "achieved *actual* success on the merits." *Eu Yan Sang*, 2010 WL 3824129, *3.

B.     Likelihood of Irreparable Harm

In a trademark case, a plaintiff can establish a risk of irreparable harm by showing a "likelihood of confusion as to source or sponsorship." *Am. Cyanamid Co. v. Campagna Per Le Farmacie in Italia S.P.A.*, 847 F.2d 53, 55 (2d Cir. 1988). Plaintiff need only raise a serious question of likelihood of confusion. *Id.* In determining the likelihood of confusion, courts may consider: (1) the strength of the mark; (2) the similarity between the marks in question; (3) the proximity of the goods in the marketplace; (4) evidence of actual confusion; (5) defendant's bad faith; (6) the quality of the defendant's products or services; and (7) the sophistication of the relevant consumers. *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961).

Here, AW and Sleepingwell are direct competitors—manufacturing, marketing, and selling the same products—which puts their goods in close proximity in the marketplace. *Prot. One Alarm Monitoring, Inc. v. Exec. Prot. One Security Serv., LLC*, 553 F. Supp. 2d 201, 206 (E.D.N.Y. 2008) ("The 'proximity of products' element addresses whether the two products compete with each other."). Additionally, the use of a corporate name that is so close to plaintiff's mark, accompanied by use of the mark itself, by a corporation selling exactly the same products is very likely to cause confusion. *See id.* (finding plaintiff's assertion on default that consumers are likely to be confused accurate where (1) the companies provided similar services

and (2) defendant's corporate name used plaintiff's mark).  Consumers are likely to assume either that Sleepingwell obtains its products from AW or that AW sponsors or endorses Sleepingwell's products.  Accordingly, plaintiff's have established irreparable harm.

C.      Remedies Available at Law Inadequate to Compensate for Injury

"In the absence of assurances in the record against a defendant's continued infringing activity, a remedy at law may be deemed insufficient to compensate a plaintiff for [its] injuries." *Eu Yan Sang*, 2010 WL 3824129, at *4; *see also Warner Bros. Entm't, Inc. v. Carsagno*, No. 06-CV-2676, 2007 WL 1655666, at *6 (E.D.N.Y. June 4, 2007).  Also, where a showing of irreparable harm has been made, this also suffices to establish the inadequacy of remedies available at law.  *See Nw. Nat'l Ins. Co. of Milwaukee, Wisconsin v. Alberts*, 937 F.2d 77, 80 (2d Cir.1991) ("The irreparable injury requisite for the preliminary injunction overlaps with the absent lack of adequate remedy at law necessary to establish the equitable rights.").  Here, defendant's refusal to appear demonstrates the inadequacy of plaintiff's remedies at law.  No assurances have been made before this Court or to plaintiff that the infringing activity will cease, nor is it likely to cease without court intervention.  Therefore, plaintiff has established this element.

D.      Balance of Hardships Tips in Plaintiff's Favor

The balance of hardships clearly tips in plaintiff's favor here, where it has established irreparable harm and that the infringing conduct is likely to continue absent injunctive relief. Defendant has persisted in its unauthorized use of plaintiff's trademark, and benefitted by that unlawful use.  Meanwhile, plaintiff has already incurred substantial legal costs in protecting its trademark rights, and as such the balance of hardships tips unquestionably in plaintiff's favor.

E.     <u>Public Interest is Not Disserved by Injunction</u>

Finally, the public interest will in fact be served by issuing an injunction. "The trademark laws are intended, in part, to protect the public from confusion." *Hermes Int'l v. Lederer De Paris Fifth Ave., Inc.*, 50 F. Supp. 2d 212, 225 (S.D.N.Y. 1999). Clearly, it is in the public interest to avoid deceit and confusion in consumer transactions. *Eu Yan Sang*, 2010 WL 3824129, at *5. Since, as discussed, Sleepingwell's use of AW's mark is likely to lead to confusion, enjoining Sleepingwell from further infringement prevents such confusion, and thereby does not disserve the public interest.

\*      \*      \*

Accordingly, I respectfully recommend that the Court issue injunctive relief as requested by plaintiff with its Proposed Default Order and Judgment. (*See* Dkt. No. 6-2, Affirmation in Support of Motion for Default Judgment ("Default Judgment Aff."), dated Dec. 1, 2010, Exh. D, ¶¶ 1-2.)

## CONCLUSION

Based on all of the foregoing, I respectfully recommend plaintiff be awarded $220,200 in damages, $20,771.50 in attorneys' fees, and $675.56 in costs. Additionally, I recommend that the Court enjoin defendant from future unlawful use of plaintiff's registered trademarks as set forth in plaintiff's Proposed Default Order and Judgment. (*See* Default Judgment Aff., Exh. D, ¶¶ 1-2.)

Any objections to this Report and Recommendation ("R&R") must be filed with the Clerk of the Court and the Honorable Nicholas G. Garaufis within fourteen days of receipt hereof. Failure to file timely objections may waive the right to appeal the District Court's Order.

*See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72; *Small v. Sec'y of Health & Human Servs.*, 892

F.2d 15, 16 (2d Cir. 1989). Plaintiff is directed to serve a copy of this R&R on defendant within

two days, and promptly thereafter file proof of service with the Court.

Dated:  August 31, 2011
        Brooklyn, New York


_Ramon E. Reyes Jr._
**Ramon E. Reyes, Jr.**
**United States Magistrate Judge**